BOARD OF SUPERVISORS OF MONROE COUNTY v. ELSIE
McDANIEL.

COUNTY PRISONERS.  *Hiring out.  Discharge.  Acts of March 9, 1882, and February
22, 1890.*
   The act of March, 1882, under which prisoners committed to jail until their
   fines should be paid, might be discharged after ten days upon filing a
   schedule of assets, was a mere amendment of chap. 79, code 1880, in rela-
   tion to county prisoners, and, since the act of February 22, 1890 (Laws
   1890, p. 94), providing that in certain specified counties prisoners should
   be hired out or worked on public roads, repealed the code provision, it
   must be held also to repeal the amendatory act.  Consequently in the
   counties named in the later act prisoners are not entitled to be discharged
   as under the act of 1882.

FROM the chancery court of Monroe county.

HON. BAXTER McFARLAND, Chancellor.

By an act of the legislature, approved March 9, 1882, chap. 79,
code 1880, in relation to prisoners in county jails, was so amended
as to allow any person on whom a fine had been imposed and who
had been committed to jail until the fine should be paid, and who
for ten days after commitment had not been hired out or employed
in some mode provided by the code, to file a schedule under oath of
all his assets and be discharged from custody.  By a later act, ap-
proved February 22, 1890, it was provided that in certain counties
therein specified, prisoners in the county jail should be hired in the
county where convicted, and in the discretion of the board of super-
visors should be worked upon public roads or other public works.
The county of Monroe is one of those to which this act is made
applicable.

The appellant, McDaniel, was convicted in 1890 in the circuit
court of Monroe county of a misdemeanor, and sentenced to pay a
fine and stand committed to the county jail until the fine and costs
were paid.  After the lapse of ten days from his commitment, not
having been hired out or employed in any manner by the board of
supervisors, he filed a schedule of his assets as required by the act
of 1882, and demanded to be discharged, and the authorities of the

county having refused to release him, he resorted to a writ of habeas corpus to obtain his discharge from custody.

The act of 1890 contains no express repeal of former statutes, and it was contended in behalf of petitioner that the provision in the act of 1882 for a discharge of prisoners after ten days, upon their filing a schedule of the assets, was not by implication repealed by the act of 1890. The judgment of the chancellor was that appellant be discharged, and from this judgment the county of Monroe has prosecuted an appeal.

*W. B. Walker,* for appellant.

Chapter 79 of the code of 1880 was intended as the only rule for the government of convicts in the county jail. Its provisions were general. The act of 1882 was merely supplemental to the code provision, and is so correlated to it that it draws its existence from it. A repeal of the code necessarily carries with it a repeal of the act of 1882. The provision of the act of 1890, touching the hiring of prisoners and their government, is not similar to any provision of the code, except one section which relates to the treatment and recapture of convicts. The two statutes are in conflict, and it is impossible that both can be the law at the same time. The act of 1890 is a complete rule within itself, with most of its provisions repugnant to the code, and it must be held that the code provisions are repealed. *R. R. Co.* v. *Jackson,* 40 Miss. 334; *Swann* v. *Buck,* Ib. 270; *Myers* v. *Marshall County,* 55 Ib. 344; *Gibbons* v. *Brittenum,* 56 Ib. 232; *Board of Education* v. *Aberdeen,* Ib. 518; 107 U. S. 445; 112 Ib. 536; 78 Ib. 88, 252; 87 Ib. 590; 97 Ib. 546; 17 Wall. 425; *Kohlbrunner* v. *State,* 67 Miss. 368.

Since the code has thus been repealed, the act of 1882, which is a mere amendment or offshoot from it, is also repealed.

*E. H. Bristow,* on the same side.

The view of the chancellor was that the act of 1882 was a separate and distinct law of itself. This view is clearly erroneous. The act of 1882 is a part of, and closely connected with, chap. 79 of the code. The condition precedent to prisoners being discharged

under that act is that they shall not have been hired out or employed in some of the modes provided by the code. Since it is conceded that the code provision in reference to hiring out of prisoners has been repealed by the act of 1890, the act of 1882 must necessarily be held to be repealed. It is not possible under the act of 1890 that the petitioner could have been, and was not, hired out or employed in any of the modes provided for in the code. The law of 1890 forbade this. Under it he could have only been hired out or employed in a mode totally different from that provided in the code.

The only two objections to appellant's position are : (1) the argument from inconvenience, and (2) that there is no reason for holding the former statute so radically changed. Under the first objection it is urged that in the absence of a statute like that of 1882, the act of 1890 would condemn prisoners to perpetual imprisonment if unable to pay the fine. This same objection would apply to the code provision, since it omitted all former statutes providing for the swearing out of prisoners. Again, certain counties were willing to return to the law as it was in the code, and either hire out prisoners, or work them on public roads or keep them confined. The argument as to perpetual imprisonment is met by § 4 of the act of 1890, which limits the term of imprisonment under any circumstances to two years. The act of 1890 was intended to afford and does afford a practical solution of the county convict question without in any emergency needing the provisions of the act of 1882.

*Geo. C. Paine*, for appellee.

The act of 1890 is simply a remedial act. It was never intended to repeal the act of 1882; just as that act was a remedial act in its application to the code. Considering the old law, the mischief and the remedy, we find that the code provided for hiring prisoners to any one on terms most favorable to the county, and the letting was entirely optional with the county authorities. The mischief of this provision was that a prisoner might possibly be incarcerated indefinitely, which would be a virtual imprisonment for debt, and besides

create great expense to the county. The remedy was provided by the act of 1882 in its humane provision that a prisoner unable to pay the fine might after ten days turn over all his assets and be discharged. This act was not intended to repeal the code of 1880 since it only repealed laws in conflict with it, nor does it repeal either expressly or by implication the act of 1882. The authorities have almost established the doctrine of no repeal by implication. Potter, Dwarris on Statutes, 154.

A remedial statute should be construed so as to meet the beneficial end in view, and prevent a failure of the remedy. Ib. 231.

*Houston & Sykes,* on the same side.

The act of 1890 contains the express provision that all laws then in force for the government and regulation of prisoners, etc., shall remain in full force and effect and extend to contracts under it, *except such laws as are in conflict with it.*

The provision in the act of 1882 for releasing prisoners after ten days on filing a schedule, does not conflict with the act of 1890. Its purpose was to enlarge the privileges of prisoners and to prevent avaricious jailers from imposing on them and making money by boarding them indefinitely. The act of 1882 was a necessity for the sake of humanity and economy to the counties. Without it, or some similar provision, imprisonment may be perpetual where there is inability to pay the fine. The act of 1890 is not an entirety, and all previous legislation should be looked to and considered. 46 Miss. 1 ; 51 Ib. 49 ; 54 Ib. 615.

CAMPBELL, J., delivered the opinion of the court.

The act entitled, " An act providing for the discharge of prisoners in county jails in certain cases, and for other purposes," approved March 9, 1882, although not such in form, is in fact a mere amendment of chapter 79 of the code of 1880, and as if its three sections were added to the chapter with appropriate numbers. Acts 1882, p. 23. Chapter 80 of acts of 1890, entitled,. " An act to provide for hiring prisoners sentenced to fine and imprisonment in the county jail of certain counties," approved February 22, 1890, acts

p. 94, abandons the scheme of chapter 79 of the code, and adopts another widely different for the eighteen counties to which it applies, and supersedes and abrogates the code as to them, except so far as certain provisions of the code chapter are by the act adopted and made operative in the counties named. As to those counties the act of 1890 takes the place of the code as to its subject, and as two bodies cannot occupy the same space at the same time, two clearly inconsistent laws cannot be equally operative, and, while repeals by implication are not favored, where it is manifest that the later act was intended to be the sole and exclusive law on the subject to which it relates, it must prevail, and be held to abrogate the former as effectually as if it contained express words to that effect. This is unmistakably the character of the act of 1890, and the act of March 9, 1882, is not in force as to the counties embraced by the act of 1890, for it superseded the code with all amendments, as to the subject of "prisoners sentenced to fine and imprisonment in the county jail of certain counties."

The prisoner was not entitled to be dealt with under the act of March 9, 1882, amendatory of chapter 79 of the code.

*The order of the chancellor for his dicharge from custody is reversed.*